IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 2017-CV-3087

PATRICIA S. CHANDLER,

    Plaintiff,

Vs.

HOME DEPOT U.S.A., INC.

    Defendant.

## COMPLAINT

### I. INTRODUCTION

This is an action brought due to the Defendant Home Depot, U.S.A, Inc's wrongful termination of Plaintiff, Patricia S. Chandler from her position as assistant store manager because of her disability, and in retaliation for requesting a reasonable accommodation, in violation of the Americans With Disabilities Act ("ADA") and the Americans with Disabilities Act Amendments Act ("ADAAA")

### II. PARTIES

1. Plaintiff is, and at all times pertinent hereto was, a resident of the state of Colorado.

2. Defendant Home Depot U.S.A., Inc. ("Home Depot") is a retail building materials supplier incorporated under the laws of the State of Delaware with its principal place of business located in Atlanta, Georgia.

3. At all times pertinent hereto, Home Depot was authorized to engage in business in the State of Colorado.

## III. JURISDICTION AND VENUE

4. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 because Plaintiff is alleging violations of her rights under the Americans With Disabilities Act, 42 U.S.C. § 12101, et. seq.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

6. Plaintiff Patricia S. Chandler has complied with all administrative, jurisdictional and legal prerequisites to the filing of this action.

## IV. GENERAL ALLEGATIONS

7. Plaintiff began working for Home Depot in November 2011 in Carson City, Nevada, later transferring to a department supervisor position at Home Depot store #1520 located in Lakewood, Colorado.

8. In just over two years as a department supervisor, Plaintiff was promoted to the position of Assistant Store Manager.

9. Prior to her promotion, Ms. Chandler received Home Depot's "Top Customer Service" award as well as a number of "Homer" awards as the result of her quality performance.

10. A few months following her December 2013 promotion, Ms. Chandler began working at the Home Depot store #1549 in Morrison, Colorado where her supervisor was Store Manager, Bill Goodchild.

11. Initially, based upon her performance Ms. Chandler received merit pay increases, management incentive plan awards and was noted to be a "valued associate" who was "well positioned."

12. Mr. Goodchild had a reputation of being a bully, having a temper and his communication style with the Plaintiff was frequently unduly negative and harsh. Mr. Goodchild was often dismissive of Chandler's efforts to engage him or obtain his direction and support, made demeaning comments to and about her and he frequently displayed his temper and demonstrated anger towards her.

13. Years earlier, Ms. Chandler had been diagnosed with clinical depression and PTSD which, following treatment, had been under control for an extended period.

14. As the result of being subjected to Mr. Goodchild's hostile and abusive manner, Chandler's symptoms of clinical depression and PTSD began to reappear.

15. In December 2014, Plaintiff met with an HR representative, Serena Bernstein after one particularly hostile interaction with Mr. Goodchild to report the situation and ask for some form of assistance.

16.     Ms. Bernstein suggested that she take some time off work to seek treatment for her PTSD condition, which was also recommended by her primary care physician.

17.     Plaintiff was on approved leave from late December 2014 through early March 2015.

18.     During that time, Plaintiff was treated by her primary care physician and Dr. Kimber-Lynne Conger, M.D., a local psychiatrist.

19.     Medical updates were provided to Home Depot and its insurer reflecting Ms. Chandler's condition and the treatment she was undergoing.

20.     During Plaintiff's medical leave, "A Performance and Development Summary" was prepared for Chandler for the time period "FY 2014: Feb'2014-Jan'2015."

21.     This summary reflected, among other things that "Pat takes a lot of pride in her performance and presents a very personal demeanor. . . .Pat has created a customer focused environment and maintains a high level of communication with her associates."

22.     This summary further reflected that the Plaintiff exceeded virtually all of the goals set out for her.

23.     Although the summary also contained notes concerning development needs and plans, nothing suggested that Chandler's performance was not acceptable. Rather, she was rated as a "valued associate" and earned an increase in merit based pay and management incentive plan payout of 12.29% of her base salary as well as an award of shares in the company.

24.     In February/March 2015, Plaintiff contacted human resources and asked for assistance upon her return to work. She expressed fear and was concerned for her health

and ability to perform when she returned to work if she was further subjected to Mr. Goodchild's aggressive and hostile manner.

25. Ms. Chandler was assured that she would be okay and advised that a report concerning Mr. Goodchild and his behavior would be made to the home office in Atlanta.

26. Plaintiff returned to work on March 2, 2015.

27. Shortly thereafter Ms. Chandler was approached by a human resource representative and advised that all of her concerns about Mr. Goodchild had been addressed and that she would not be subjected to his abusive behavior in the future.

28. Plaintiff then requested a meeting be held between herself and Mr. Goodchild and a human resources representative to ensure that the air was cleared, and the parties could work together professionally going forward.  During the meeting which occurred in March 2015 Mr. Goodchild became enraged, yelling at and berating Ms. Chandler.

29. In addition, Mr. Goodchild openly belittled Ms. Chandler's medical diagnosis indicating that he personally had been through terrible things and did not suffer from PTSD.

30. Shortly thereafter, with the full support of her psychiatrist, Plaintiff submitted a formal request to be transferred to another store.  Dr. Conger submitted a written request for accommodation on Ms. Chandler's behalf advising that her current supervisor's (William Goodchild's) "behavior uniquely effects Ms. Chandler such that multiple symptoms of PTSD are triggered."  Dr. Conger identified those symptoms as, among other things ". . .disassociation, [and] cognitive paralysis."  Dr. Conger noted that

Ms. Chandler needed to be transferred away from Mr. Goodchild on a permanent basis, saying: "He will make her ill."

31. Despite its obligations under the ADA, Home Depot had no interactive meeting with the Plaintiff to review her requested accommodation nor was there any discussion with her about other means by which she might be accommodated.

32. Despite the reasonableness of Ms. Chandler's requested accommodation, in April 2015, Home Depot representatives met with the Plaintiff and advised that her request for accommodation was denied and that she would continue to be directly supervised by Mr. Goodchild.

33. Within a few months, after the Plaintiff returned to work, Mr. Goodchild resumed his in-person hostile interactions with her by making negative or inappropriate comments denigrating her and her performance and making negative comments about or relating to her medical issues. As Dr. Conger predicted, Ms. Chandler's symptoms increased.

34. On numerous occasions, Ms. Chandler reported Mr. Goodchild's behavior toward her and its negative impact on her health and her ability to perform to her usual high level and requested the company's assistance, but the Defendant took no affirmative action to protect Ms. Chandler from Mr. Goodchild's hostile and abusive behavior and/or to otherwise afford Ms. Chandler some relief.

35. Rather, following her reports and requests, Mr. Goodchild's abusive behavior escalated, and he began actively retaliating against Ms. Chandler, failing to give her required guidance and direction, cultivating negative impressions of Ms. Chandler

with others, subjecting her to unfounded corrective actions and pretextual reviews and write-ups and placing her on a performance improvement plan.

36. Although Ms. Chandler was receiving ratings of "Exceeds Expectations" on most objective performance criteria, as the result of her complaints concerning Mr. Goodchild, on subjective criteria she began receiving the lowest possible rating—"Inconsistently Demonstrates." For example, following her reports of Mr. Goodchild's abusive behavior, she received the rating of "inconsistently demonstrates" on the category of "Respect for All People." with comments critical of how she handled interactions with others whose behavior created conflict.

37. Despite repeated requests for assistance from human resources, Mr. Goodchild was permitted to continue his campaign against Ms. Chandler and ultimately on February 7, 2016, Mr. Goodchild terminated her employment reportedly for below standard performance.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Failure to Provide Reasonable Accommodation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*)**

38. Plaintiff incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

39. The ADA, 42 U.S.C. § 12101, et seq, and as amended prohibits discrimination against qualified individuals with a disability who are able to perform the essential functions of their position with or without reasonable accommodation.

40. Plaintiff Pat Chandler was/is disabled in that she suffers from severe depression and post-traumatic stress disorder which, when triggered, substantially impact her ability to, among other things, think, communicate and sleep.

41. In addition, Ms. Chandler was regarded by the Defendant as disabled based on her actual or perceived physical or mental impairment.

42. Plaintiff Patricia S. Chandler was/is an otherwise qualified person able to perform the essential functions of her job with one or more reasonable accommodation(s).

43. Defendant failed to engage in the interactive process with Ms. Chandler as required by the ADA.

44. Defendant refused to provide her with the reasonable accommodation she requested or provide her with another accommodation that would have enabled her to perform her existing job and/or to transfer her to another position for which she was qualified.

45. Defendant's conduct, including its denial of a reasonable accommodation request(s), failure to participate in the interactive process and discrimination against Plaintiff by, among other things, terminating her employment constitute violations of the ADA.

46. As a proximate result of the Defendant's unlawful and discriminatory actions, Plaintiff has suffered lost wages and benefits, past and future, emotional distress and other compensatory damages and has incurred attorney's fees and costs.

## SECOND CLAIM FOR RELIEF
**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12181,** *et seq.***)**

47. Plaintiff incorporated by reference paragraphs 1 through 46 as if fully set forth herein.

48. Plaintiff engaged in a protected activity when, on multiple occasions, she requested a reasonable accommodation under the ADA.

49. Following, and as a direct result of, her requests for a reasonable accommodation, Plaintiff was subjected to adverse employment actions including, among other things, Mr. Goodchild's refusal to provide her with necessary training and supervision, being subjected to write ups and various disciplinary actions, being placed on a performance improvement plan and ultimately the termination of her employment.

50. Defendant would not have taken these actions but for the Plaintiff's protected activity.

51. As a proximate result of the Defendant's unlawful actions, Plaintiff has suffered lost wages and benefits, past and future, emotional distress and other compensatory damages and has incurred attorney's fees and costs. V

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests entry of judgment in her favor and against the Defendant as follows:

a) Damages in an amount to be proven at trial for lost wages and benefits;

b)      An award of front pay, including benefits, for a reasonable period in lieu of reinstatement;

c)      Compensatory damages, including damages for emotional distress as allowed by law;

d)      Punitive damages as allowed by law;

e)      Attorney's fees and costs as provided by law;

f)      Pre- and post-judgment interest;

g)      Costs and expert fees; and in an amount to be determined at trial;

h)      Order Defendant to reinstate Plaintiff, or award Plaintiff front pay (including benefits) for a reasonable period in lieu of reinstatement;

i)      Award to Plaintiff liquidated damages, pursuant to 29 U.S.C. § 2617(a)(1);

j)      Award to Plaintiff costs and reasonable attorneys' fees incurred in connection with this action, pursuant to 29 U.S.C. § 2617(3) and 42 U.S.C. § 12117; and

k)      Such other and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSES SO TRIABLE.**

Dated this 21st day of December, 2017.

                                        Respectfully Submitted,

                                        **MARILEE E. LANGHOFF, P.C.**

                                        */s/ Marilee E. Langhoff*
                                        Marilee E. Langhoff
                                        6795 East Tennessee Avenue, #330
                                        Denver, Colorado 80224
                                        Phone: (720) 639-2870
                                        Fax: (720) 639-2869
                                        Marilee@langhofflaw.com

<u>Plaintiff's Address:</u>
Patricia S. Chandler
3319 West Centennial Avenue
Littleton, Colorado 80123